AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California



United States of America

v.

TONY TYRON LEE STEWART,
RAYFORD NEWSOME, and
JEROME GREGORY BELSER,

Defendants.

Case No.        2:22-mj-00198-duty

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 15, 2022,  in the county of Los Angeles in the Central District of California, the

defendant(s) violated:

|   *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Nicholas Williams*
*Complainant's signature*

Nicholas Williams, ATF Task Force Offier
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   January 18, 2022        _____
*Judge's signature*

City and state:   Los Angeles, California        Hon. Jean P. Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Nicholas Williams, being duly sworn, declare and state as follows:

### **I. PURPOSE OF AFFIDAVIT**

1.   This affidavit is made in support of criminal complaints and arrest warrants against the following individuals:

      a.   Tony Tyron Lee STEWART ("STEWART");

      b.   Rayford NEWSOME ("NEWSOME"); and

      c.   Jerome Gregory BELSER ("BELSER");

for a violation of 18 U.S.C. § 1951(a): Interference with Commerce by Robbery.

2.   This affidavit is also made in support of an application for a warrant to search the following digital devices (collectively, the "SUBJECT DEVICES"), seized on January 15, 2022, and in the custody of the Los Angeles Police Department, in Los Angeles, California, as described more fully in Attachment A:

      a.   A blue Apple iPhone in a green silicone case with an International Mobile Equipment Identity ("IMEI") of 352615451466477 ("SUBJECT DEVICE 1");

      b.   A black Apple iPhone with an IMEI of 353342883418757 ("SUBJECT DEVICE 2");

      c.   A white Apple iPhone with an IMEI of 352893115332142 ("SUBJECT DEVICE 3"); and

      d.   A black Apple iPhone with a cracked screen and an IMEI of 356855117366952 ("SUBJECT DEVICE 4").

3.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 1951(a) (Interference with Commerce by Robbery); and 371 (Conspiracy) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. <u>BACKGROUND OF AFFIANT</u>

5.    I am a Deputized Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Los Angeles Field Division, as well as a Detective with the Los Angeles Police Department ("LAPD").  I have been employed by LAPD as a police officer for approximately nineteen years and have held the rank of Detective for the past seven years.  I am tasked with investigating cases involving robberies, burglaries, petty and grand thefts, batteries, assaults with deadly weapons ("ADWs"), auto thefts, burglaries,

and cases involving the illegal use, sale, possession of
firearms and narcotics.

6.      During my tenure as a police officer and a TFO, I have
authored and participated in numerous state and federal search
warrants, controlled purchases of drugs and firearms,
surveillance operations, wiretaps, interceptions of consensually
monitored telephone calls, and the arrests of organized crime
suspects involved in state and federal offenses including
robbery, burglary, firearms and drug trafficking.  I have also
been introduced to, and been a handler for, confidential
informants and sources that possessed extensive knowledge of the
inner workings of robberies, burglaries, thefts, firearm and
narcotics trafficking as well as to criminal street gangs.  I
also consult regularly with other robbery, burglary, firearm,
narcotic, and gang experts regarding the methods and practices
of street gang members and other individuals participating in
the delineated crimes.  I have interviewed numerous suspects,
victims, and witnesses related to these types of crimes and have
gained invaluable knowledge as to the planning, preparation, and
execution of these crimes.  This information also includes the
practices implemented by criminals to avoid detection and arrest
by law enforcement.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

7.      Law enforcement has been actively investigating a
string of approximately 50 incidents throughout Southern
California in which robbers entered a cell phone store during
store hours, used hammers to smash display cases, grabbed Apple

iPhones and other devices, and ran out of the store.  During their investigation, officers obtained warrants for GPS location data associated with four cell phone numbers, including numbers later identified as belonging to STEWART and NEWSOME, that used cell phone towers near several robberies around the time of the robberies.  Law enforcement also obtained a GPS tracker warrant for a blue Kia Optima used during some of the robberies.

8.   On January 15, 2022, LAPD received reports of a robbery at a T-Mobile Wireless store at 17133 Ventura Boulevard in Encino (the "Encino T-Mobile Wireless").  Surveillance video and cell-phone video of the robbery showed three suspects carrying distinctive-looking hammers walking into the store during store hours, smashing display cases, and taking Apple iPhones and other merchandise.  Law enforcement received reports of similar robberies that same day at cell phone stores in Inglewood, Long Beach, and Woodland Hills.  GPS location data for STEWART's phone, NEWSOME's phone, and the blue Kia Optima showed that the two phones and the car were in the vicinity of the robberies around the time they occurred.

9.   That same evening, LAPD used the tracker on the blue Kia Optima to track down the car in North Hollywood.  After a short pursuit, four individuals were found in the blue Kia Optima--NEWSOME, STEWART, BELSER, and a juvenile.  NEWSOME, BELSER, and the juvenile were wearing clothes similar to those worn by the Encino T-Mobile Wireless robbers.  Inside the blue Kia Optima, officers recovered devices with the same IMEI numbers as the items reported stolen during the Encino T-Mobile

Wireless robbery.  Officers also recovered hammers that had the same distinctive handle coloring as those used during the Encino T-Mobile Wireless robbery.  STEWART had SUBJECT DEVICE 1 on his person and NEWSOME had SUBJECT DEVICES 2, 3, and 4 on his person.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

10.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    Law Enforcement Investigates Approximately 50 Cell Phone Store Robberies Believed to Be Work of Same Crew**

11.  On December 16, 2021, I and other investigators from the Los Angeles Police Department's ("LAPD") Operations—Valley Bureau Gang Task Force assumed investigative responsibilities over a series of robberies that occurred at T-Mobile Wireless and other cell phone retailers throughout Southern California between November 2021 and January 2022.  Although many of the robberies occurred within the City of Los Angeles, others transpired elsewhere in Los Angeles County, Ventura County, Orange County, and San Bernardino County.

12.  Based on similarities in: (i) modus operandi of the robbers; (ii) physical descriptions of the suspects; (iii) descriptions of the suspects' clothing; (iv) descriptions of the getaway car used by the suspects, sometimes identified as a blue Kia sedan; (v) the fact that many of the robberies occurred at cell phone stores in close proximity to each other and within a short span of time; (vi) an analysis of cell tower

data identifying cell phone numbers (including STEWART's and NEWSOME's numbers) that were pinging cell towers near the location of (and around the time of) multiple robberies; (vii) GPS location data for STEWART's, NEWSOME's, and other suspects' cell phone numbers; and (viii) GPS location data for what turned out to be the robbers' getaway vehicle, I believe that approximately 50 cell phone store robberies between November 11, 2021, and January 15, 2022, were likely committed by the same group of individuals.

13.   The robberies believed to be the work of the same perpetrators include the following incidents:

     a.   November 11, 2021, 6:25 p.m., T-Mobile Wireless Store, 7303 Figueroa Boulevard, Los Angeles, California;

     b.   November 16, 2021, 7:16 p.m., T-Mobile Wireless Store, 3816 Magnolia Boulevard, Burbank, California;

     c.   November 29, 2021, 7:26 p.m., T-Mobile Wireless Store, 1818 Durfee Avenue, South El Monte, California;

     d.   December 6, 2021, 4:54 p.m., T-Mobile Wireless Store, 3725 Foothill Boulevard, La Crescenta, California;

     e.   December 6, 2021, 5:11 p.m., T-Mobile Wireless Store, 2040 Glenoaks Boulevard, San Fernando, California;

     f.   December 6, 2021, 5:47 p.m., T-Mobile Wireless Store, 8225 Topanga Canyon Boulevard, Canoga Park, California;

     g.   December 6, 2021, 6:37 p.m., T-Mobile Wireless Store, 10569 W. Pico Boulevard, Los Angeles (Century City), California;

h.    December 6, 2021, 7:05 p.m., T-Mobile Wireless Store, 4371 Glencoe Avenue, Marina Del Rey, California;

i.    December 8, 2021, 6:55 p.m., T-Mobile Wireless Store, 1338 E. Valley Boulevard, Alhambra, California;

j.    December 8, 2021, 7:07 p.m., Spectrum Mobile Wireless Store, 2108 S. Atlantic Boulevard, Monterey Park, California;

k.    December 8, 2021, 7:36 p.m., T-Mobile Wireless Store, 429 N. Western Avenue, Los Angeles, California;

l.    December 8, 2021, 8:00 p.m., T-Mobile Wireless Store, 3183 Wilshire Boulevard, Los Angeles, California;

m.    December 13, 2021, 5:34 p.m., T-Mobile Wireless Store, 1088 E. Huntington Drive, Duarte, California;

n.    December 13, 2021, 6:18 p.m., T-Mobile Wireless Store, 1271 N. Lake Avenue, Pasadena, California;

o.    December 13, 2021, 6:58 p.m., T-Mobile Wireless Store, 4800 Laurel Canyon Boulevard, Valley Village, California;

p.    December 13, 2021, 7:40 p.m., T-Mobile Wireless Store, 21844 Ventura Boulevard, Woodland Hills, California;

q.    December 13, 2021, 7:54 p.m., T-Mobile Wireless Store, 18207 Sherman Way, Reseda, California;

r.    December 13, 2021, 8:31 p.m., T-Mobile Wireless Store, 524 Pacific Coast Highway, Hermosa Beach, California;

s.    December 16, 2021, 7:49 p.m., T-Mobile Wireless Store, 1216 S. Idaho Street, La Habra, California;

t.    December 17, 2021, 6:55 p.m., T-Mobile Wireless Store, 5301 Whittier Boulevard, East Los Angeles, California;

u.    December 18, 2021, 5:56 p.m., T-Mobile Wireless Store, 13526 Whittier Boulevard, Whittier, California;

v.    December 20, 2021, 5:40 p.m., T-Mobile Wireless Store, 2950 Cochran Street, Simi Valley, California;

w.    December 20, 2021, 6:23 p.m., T-Mobile Wireless Store, 105 E. Alameda Avenue, Burbank, California;

x.    December 20, 2021, 7:20 p.m., T-Mobile Wireless Store, 2904 Hyperion Avenue, Los Angeles, California;

y.    December 20, 2021, 8:31 p.m., T-Mobile Wireless Store, 1207 S. Soto Street, Los Angeles, California;

z.    November 26, 2021, 6:38 p.m., T-Mobile Wireless Store, 4110 Highland Avenue, Highland, California;

aa.   November 28, 2021, 6:43 p.m., T-Mobile Wireless Store, 1047 Harriman Place, San Bernardino, California;

bb.   December 23, 2021, 5:02 p.m., T-Mobile Wireless Store, 680 W. Huntington Drive, Monrovia, California;

cc.   December 23, 2021, 6:28 p.m., T-Mobile Wireless Store, 11719 Rosecrans Avenue, Norwalk, California;

dd.   December 23, 2021, 7:02 p.m., T-Mobile Wireless Store, 2401 N Broadway, Los Angeles, California;

ee.   December 23, 2021, 8:55 p.m., T-Mobile Wireless Store, 551 S Western Avenue, Los Angeles, California;

ff.   December 28, 2021, 4:31 p.m., T-Mobile Wireless Store, 333 East Main Street, Alhambra, California;

gg.   December 28, 2021, 5:15 p.m., T-Mobile Wireless Store, 9400 Firestone Boulevard, Downey, California;

hh.   December 28, 2021, 5:40 p.m., T-Mobile Wireless Store, 9210 Lakewood Boulevard, California;

ii.   December 28, 2021, 6:00 p.m., T-Mobile Wireless Store, 6919 Eastern Avenue, Bell Gardens, California;

jj.   December 28, 2021, 6:21 p.m., T-Mobile Wireless Store, 482 East Washington Boulevard, California;

kk.   December 28, 2021, 7:30 p.m., T-Mobile Wireless Store, 5807 Kanan Road, Agoura Hills, California;

ll.   December 28, 2021, 8:10 p.m., T-Mobile Wireless Store, 415 West Ventura Boulevard, Camarillo, California;

mm.   December 29, 2021, 4:50 p.m., T-Mobile Wireless Store, 5555 North Azusa Avenue, Azusa, California;

nn.   December 29, 2021, 7:13 p.m., Best Buy Store, 12989 Park Plaza Drive, Cerritos, California;

oo.   December 29, 2021, 7:56 p.m., T-Mobile Wireless Store, 13528 Lakewood Boulevard, Bell Flower, California;

pp.   December 30, 2021, 5:25 p.m., T-Mobile Wireless Store, 15942 Halliburton Road, Hacienda Heights, California;

qq.   January 5, 2022, 6:26 p.m., T-Mobile Wireless Store, 506 Foothill Boulevard, La Cañada, California;

rr.   January 5, 2022, 7:33 p.m., T-Mobile Wireless Store, 1404 Sepulveda Boulevard, Mission Hills, California;

ss.   January 5, 2022, 8:08 p.m., T-Mobile Wireless Store, 6400 Owensmouth Avenue, Woodland Hills, California;

tt.   January 11, 2022, 5:56 p.m., T-Mobile Wireless Store, 2515 E. Imperial Highway, Brea, California;

uu.   January 11, 2022, 7:49 p.m., T-Mobile Wireless Store, 1040 S. Mount Vernon Avenue, Colton, California;

vv.   January 13, 2022, 5:13 p.m., T-Mobile Wireless Store, 1019-101 West Avenue L, Lancaster, California;

ww.   January 13, 2022, 7:51 p.m., T-Mobile Wireless Store, 1619 W. Pico Boulevard, Los Angeles, California;

xx.   January 13, 2022, 8:17 p.m., T-Mobile Wireless Store, 2708 E. 1st Street, Los Angeles, California;

yy.   January 15, 2022, 4:39 p.m., T-Mobile Wireless Store, 2601 N. Bellflower Boulevard, Long Beach, California; and

zz.   January 15, 2022, 5:18 p.m., T-Mobile Wireless Store, 619 W. Manchester Avenue, Inglewood, California.

14.   According to T-Mobile Asset Protection personnel, the above-listed robberies of T-Mobile Wireless stores between November 11, 2021, and January 15, 2022, caused an approximate loss of $240,000 to T-Mobile.

**B.   Police Identify Similarities in Modus Operandi and One of the Getaway Cars Driven by the Robbers**

15.   Based on my review of police reports, surveillance video footage, photographs, and discussions with law enforcement officers, I learned the following about the modus operandi of the robbers:

a.   In the overwhelming majority of robberies, the suspects, wearing ski masks covering most of their faces, would enter the store during business hours.

b.   In the presence of customers and employees, the robbers would then use hammers to smash displays in the stores,

10

remove smartphones (such as the Apple iPhone) and other devices from the displays, carry the devices out of the store, get into a car (sometimes described as a dark sedan or dark blue Kia sedan), and drive away.

c.    The suspects were described as black males between 20 and 30 years of age.

16.  If an employee, security guard, or customer attempted to stop the robbers, one or more of the robbers would raise a hammer toward the person in a threatening manner so as to dissuade further intervention.  Based on my review of police reports and surveillance video footage, I have identified at least four robberies in which one or more robbers raised their hammers toward a person during the robbery: (i) December 8, 2021, 6:55 p.m., T-Mobile Wireless Store, 1338 E. Valley Boulevard, Alhambra, California; (ii) December 28, 2021, 6:21 p.m., T-Mobile Wireless Store, 482 East Washington Boulevard, California; (iii) December 30, 2021, 5:25 p.m., T-Mobile Wireless Store, 15942 Halliburton Road, Hacienda Heights, California; and (iv) January 5, 2022, 8:08 p.m., T-Mobile Wireless Store, 6400 Owensmouth Avenue, Woodland Hills, California.

17.  Moreover, in six of the above-referenced 50 robberies, witnesses and surveillance footage identified the getaway car as a dark sedan or a dark blue Kia sedan:

a.    December 6, 2021, 4:54 p.m., T-Mobile Wireless Store, 3725 Foothill Boulevard, La Crescenta, California;

b.   December 13, 2021, 6:58 p.m., T-Mobile Wireless Store, 4800 Laurel Canyon Boulevard, Valley Village, California;

c.   December 13, 2021, 8:31 p.m., T-Mobile Wireless Store, 524 Pacific Coast Highway, Hermosa Beach, California;

d.   December 28, 2021, 4:31 p.m., T-Mobile Wireless Store, 333 East Main Street, Alhambra, California;

e.   December 30, 2021, 5:25 p.m., T-Mobile Wireless Store, 15942 Halliburton Road, Hacienda Heights, California; and

f.   January 5, 2022, 8:08 p.m., T-Mobile Wireless Store, 6400 Owensmouth Avenue, Woodland Hills, California.

18.   In addition, I reviewed three still photographs of the robbers' getaway vehicle from the robbery of the T-Mobile Wireless Store in Alhambra, California on December 28, 2021. The still photographs of surveillance video footage show a dark blue, four-door sedan without a front license plate and with a distinctive front grill and headlights shape.

**C.   Cell Tower Data Identifies Numbers Associated with STEWART and NEWSOME as Being Near the Site of Multiple Robberies**

19.   On December 20, 2021, the Honorable Patricia A. Hunter, of the Superior Court for the State of California, County of Los Angeles, signed a "tower dump" search warrant for transactional records associated with cellular telephone towers located near some of the robberies around the times the robberies occurred.  The search warrant also requested subscriber information for those cellular telephone numbers that used cell towers near the robberies.  Specifically, I requested

cell tower data for the robberies listed above that occurred between November 11, 2021, and December 13, 2021.

20.  On December 30, 2020, I reviewed and analyzed the cellular tower data and identified four numbers, including STEWART's cell number and NEWSOME's cell number, that pinged off cell towers located near multiple robberies.

21.  In a post-arrest Mirandized statement on January 15, 2022, STEWART identified (909) 246-5551 ("STEWART CELL") as his phone number.  In addition, I reviewed a Pasadena Police Department report regarding the arrest of STEWART on December 30, 2020, in connection with stealing cellular phones and smart watches from a T-Mobile Wireless store in Pasadena.  On that occasion, STEWART also told police officers that STEWART CELL was his phone number.  STEWART CELL was identified as using cell towers located near the following robberies around the time of the robberies:

      a.   November 11, 2021, 6:25 p.m., T-Mobile Wireless Store, 7303 Figueroa Boulevard, Los Angeles, California;

      b.   November 29, 2021, 7:26 p.m., T-Mobile Wireless Store, 1818 Durfee Avenue, South El Monte, California;

      c.   December 6, 2021, 4:54 p.m., T-Mobile Wireless Store, 3725 Foothill Boulevard, La Crescenta, California;

      d.   December 6, 2021, 5:11 p.m., T-Mobile Wireless Store, 2040 Glenoaks Boulevard, San Fernando, California;

      e.   December 6, 2021, 6:37 p.m., T-Mobile Wireless Store, 10569 W. Pico Boulevard, Los Angeles (Century City), California;

       f.    December 6, 2021, 7:05 p.m., T-Mobile Wireless Store, 4371 Glencoe Avenue, Marina Del Rey, California;

       g.    December 8, 2021, 6:55 p.m., T-Mobile Wireless Store, 1338 E. Valley Boulevard, Alhambra, California;

       h.    December 8, 2021, 7:07 p.m., Spectrum Mobile Wireless Store, 2108 S. Atlantic Boulevard, Monterey Park, California;

       i.    December 8, 2021, 7:36 p.m., T-Mobile Wireless Store, 429 N. Western Avenue, Los Angeles, California;

       j.    December 8, 2021, 8:00 p.m., T-Mobile Wireless Store, 3183 Wilshire Boulevard, Los Angeles, California;

       k.    December 13, 2021, 5:34 p.m., T-Mobile Wireless Store, 1088 E. Huntington Drive, Duarte, California;

       l.    December 13, 2021, 6:18 p.m., T-Mobile Wireless Store, 1271 N. Lake Avenue, Pasadena, California;

       m.    December 13, 2021, 6:58 p.m., T-Mobile Wireless Store, 4800 Laurel Canyon Boulevard, Valley Village, California;

       n.    December 13, 2021, 7:54 p.m., T-Mobile Wireless Store, 18207 Sherman Way, Reseda, California; and

       o.    December 13, 2021, 8:31 p.m., T-Mobile Wireless Store, 524 Pacific Coast Highway, Hermosa Beach, California.

22.  In a post-arrest Mirandized statement on January 15, 2022, NEWSOME identified (562) 348-7079 ("NEWSOME CELL") as his phone number.  NEWSOME CELL was identified as using cell towers located near the following robberies around the time of the robberies:

a.   December 6, 2021, 4:54 p.m., T-Mobile Wireless Store, 3725 Foothill Boulevard, La Crescenta, California;

b.   December 6, 2021, 5:11 p.m., T-Mobile Wireless Store, 2040 Glenoaks Boulevard, San Fernando, California;

c.   December 6, 2021, 6:37 p.m., T-Mobile Wireless Store, 10569 W. Pico Boulevard, Los Angeles (Century City), California;

d.   December 6, 2021, 7:05 p.m., T-Mobile Wireless Store, 4371 Glencoe Avenue, Marina Del Rey, California;

e.   December 8, 2021, 7:36 p.m., T-Mobile Wireless Store, 429 N. Western Avenue, Los Angeles, California;

f.   December 8, 2021, 8:00 p.m., T-Mobile Wireless Store, 3183 Wilshire Boulevard, Los Angeles, California;

g.   December 13, 2021, 5:34 p.m., T-Mobile Wireless Store, 1088 E. Huntington Drive, Duarte, California;

h.   December 13, 2021, 6:58 p.m., T-Mobile Wireless Store, 4800 Laurel Canyon Boulevard, Valley Village, California;

i.   December 13, 2021, 7:40 p.m., T-Mobile Wireless Store, 21844 Ventura Boulevard, Woodland Hills, California; and

j.   December 13, 2021, 8:31 p.m., T-Mobile Wireless Store, 524 Pacific Coast Highway, Hermosa Beach, California.

**D.   Surveillance Video Footage, Police Reports, and Other Evidence Suggest That STEWART Was Involved in December 8, 2021 Robberies**

23.   Other evidence and reports suggest that STEWART was involved in the robberies of T-Mobile and Spectrum Mobile stores on December 8, 2021.

a.    According to an Alhambra Police Department
report, on December 8, 2021, at approximately 6:34 p.m., two
black males walked into a Home Depot located at 500 S. Morengo
Avenue, Alhambra, California, grabbed crowbars and hammers from
one of the aisles, and walked out of the store without paying
for the items.  The suspects were described as two black males
wearing gray hooded sweatshirts and gray sweatpants.  After
shoplifting the items, the two suspects got into a dark blue car
driven by a third suspect and fled.

b.    I reviewed surveillance video footage from the
Home Depot incident.  The video shows the two black male
suspects, unmasked, wearing gray hooded sweatshirts, gray
sweatpants, and black sneakers.  The two suspects are shown
grabbing items and stuffing them into their pockets and
underneath their clothes before walking quickly out of the
aisle.  A portion of a reddish shirt can be seen underneath the
gray sweatshirt of one of the suspects.

c.    I reviewed a booking photograph of STEWART from
his January 15, 2022 arrest.  Based on my review of STEWART's
booking photo and the Home Depot surveillance footage of the
unmasked suspect wearing a red shirt under his gray sweatshirt,
I believe that STEWART and that suspect are the same person.

d.    About 20 minutes after the Home Depot incident,
at approximately 6:49 p.m., a T-Mobile store at 1338 E. Valley
Boulevard, Alhambra, was robbed.  I have reviewed surveillance
video footage from this robbery.  The video shows two black male
suspects wearing gray hooded sweatshirts, gray sweatpants, black

sneakers, and ski masks using hammers to smash display cases and steal cellular phones.  The video also shows one of the suspects wearing a red shirt underneath his gray sweatshirt.  One suspect uses a hammer to break the locks on iPhones that were on display in the store while the other tried to remove Apple Watches from display cases with his hands.  When one of the T-Mobile employees approached the suspect who was smashing the displays, the suspect raised his hammer toward the employee and made a movement suggesting he was going to strike the employee with the hammer.  Witnesses stated that the suspects walked out of the Alhambra T-Mobile with approximately $3,000 worth of merchandise.

      e.    Twenty minutes later, around 7:07 p.m., two individuals robbed the Spectrum Mobile Wireless Store located at 2108 S. Atlantic Boulevard, Monterey Park, California.  I have reviewed surveillance video footage from this robbery.  The video shows two black male suspects wearing gray hooded sweatshirts, gray sweatpants, black sneakers, and ski masks using hammers to smash display cases and steal cellular phones. The video also shows one of the suspects wearing a red shirt underneath his gray sweatshirt.  The suspect wearing the red shirt uses a hammer to remove four iPhones and some Apple Watches from their display cases.  The two suspects then grab the iPhones and watches and leave the store.

      f.    Thirty minutes later, around 7:36 p.m., two individuals robbed T-Mobile Wireless Store, 429 N. Western Avenue, Los Angeles, California.  I have reviewed surveillance

video footage from this robbery.  The video shows two suspects
wearing gray hooded sweatshirts, gray sweatpants, black
sneakers, and ski masks using hammers to smash display cases and
steal cellular phones.  The suspects then grab the phones and
leave the store.

g.   Twenty-five minutes later, around 8:00 p.m., two
suspects robbed the T-Mobile store at 3183 Wilshire Boulevard,
Los Angeles, California.  I have reviewed surveillance video
footage from this robbery.  The video shows two suspects wearing
gray hooded sweatshirts, gray sweatpants, black sneakers, and
ski masks using hammers to smash display cases and steal
cellular phones.  The video also shows one of the suspects
wearing a red shirt underneath his gray sweatshirt.  The
suspects then grab the phones and leave the store.

24.  Based on: (i) my comparison of the video footage of
the individuals from the Home Depot shoplifting incident, the
Alhambra T-Mobile store robbery, the Spectrum Mobile Wireless
store robbery, the Western Avenue T-Mobile robbery, and the
Wilshire Boulevard T-Mobile robbery; (ii) the similarities in
clothing and build of the suspects involved in these incidents;
(iii) the temporal and geographical proximity of the incidents;
(iv) the nearly identical modus operandi of the robberies using
a hammer to smash display cases and walk out with merchandise, I
believe that the same two suspects, including STEWART, committed
all of these offenses.

**E.    Law Enforcement Discovvers One of the Robbers' Getaway Vehicles**

25.    Based on the identification of STEWART CELL, NEWSOME CELL, and two other numbers as cell phones that were being used near the location of multiple robberies around the time they occurred (in addition to other evidence), the Honorable Alka Sagar, United States Magistrate Judge, issued a warrant for historical and prospective GPS location data for STEWART CELL, NEWSOME CELL, and two other phones in case number 22-mj-74, on January 7, 2022.  The warrant further authorized law enforcement to use a portable cell-site simulator, commonly referred to as a "Stingray," to locate the robbery suspects.  A copy of the GPS location data warrant and affidavit in support are attached as Exhibit A.

26.    Based on similar evidence, on December 30, 2021, the Honorable David W. Stuart of the Los Angeles County Superior Court, signed a warrant for GPS location data for STEWART CELL, NEWSOME CELL, and two other suspects' phones.

27.    I soon began receiving and monitoring GPS location data for STEWART CELL, NEWSOME CELL, and the two other suspect phones that were the subject of the GPS location data warrants. In early January 2022, GPS location data for NEWSOME CELL[1]

---

[1] Based on the subscriber information and authorized user information for NEWSOME CELL, law enforcement originally believed that the person using NEWSOME CELL (and driving the suspected getaway car) was one of the authorized users of the phone.  Subsequent events, including NEWSOME's identification of NEWSOME CELL as his number and NEWSOME's discovery in a car with STEWART, hammers, face masks, and multiple items stolen from cell phone stores who were robbed by men using hammers and
*(footnote cont'd on next page)*

suggested that the phone was located in the area of 1303 W. Francisquito Avenue, West Covina, California.  On January 12, 2022, I and other law enforcement officers traveled to that location to conduct surveillance and attempted to identify the robber at that location.

28.  During the surveillance, I saw a dark blue Kia Optima four-door sedan bearing a California license plate number of BU21L86, (the "Blue Optima") parked inside the apartment complex located at 1303 W. Francisquito Avenue.  The Blue Optima was parked in a spot designated "#46" and did not have a front license plate.

29.  I took a photo of the Blue Optima at the Francisquito Avenue address and compared it with the car shown in the photographs from the robbery of the Alhambra T-Mobile Wireless store on December 28, 2021.  Based on similarities in color, front grill and headlights shape, as well as the absence of a front license plate, I believe that the Blue Optima was the same car driven by the robbers during the December 28, 2021 robbery.

30.  Moreover, cell phone tower data identified NEWSOME CELL as being present at three of the six robberies in which the getaway vehicle was described as a dark sedan or a dark blue Kia sedan: (i) December 6, 2021, 4:54 p.m., T-Mobile Wireless Store, 3725 Foothill Boulevard, La Crescenta, California; (ii) December 13, 2021, 6:58 p.m., T-Mobile Wireless Store, 4800 Laurel Canyon Boulevard, Valley Village, California; and (iii) December 13,

---

generally fitting the description of the occupants in the car just hours before, has led law enforcement to identify NEWSOME CELL as belonging to NEWSOME.

2021, 8:31 p.m., T-Mobile Wireless Store, 524 Pacific Coast
Highway, Hermosa Beach, California.

31.  On January 13, 2021, I returned to the 1303 W.
Francisquito Avenue apartment complex and, using a portable cell
site simulator, determined that NEWSOME CELL was located in
Apartment #46.

32.  Based on the discovery of the Blue Optima near the
NEWSOME CELL and the similarity of the Blue Optima to
surveillance video images and witness descriptions of the car
used by the robbers on some occasions, on January 13, 2022, the
Honorable Sherilyn Garnett, Los Angeles County Superior Court,
issued a warrant authorizing the installation of a GPS tracker
on the Blue Optima.

33.  On January 14, 2022, officers returned to 1303 W.
Francisquito Avenue and installed a GPS tracker on the Blue
Optima.

     **F.    January 15, 2022 - LAPD Officers Stop the Blue Optima
        and Find STEWART, NEWSOME, BELSER, Hammers, Face
        Masks, and Stolen Merchandise from the Encino T-Mobile
        Store Robbery and Other Robberies**

34.  On January 15, 2022, around 5:45 p.m., LAPD received
information that witnesses had reported a robbery at the Encino
T-Mobile Wireless.  Witnesses reported that three black male
suspects had entered the store, each armed with a hammer.  The
suspects then used hammers to smash displays and remove five
iPhones, two iPads, and two Apple Watches from the store.

35.  I have reviewed cell phone and surveillance video
footage taken during the January 15, 2022, robbery of the Encino

T-Mobile Wireless.  The video shows three suspects.  All three of the suspects are wearing dark-colored hooded sweatshirts and ski masks.  Two of the suspects are wearing gray sweatpants and one suspect is wearing black sweatpants.  The suspects are smashing display cases with hammers and grabbing merchandise.

36.  The video also showed the distinctively colored handles of the hammers wielded by the suspects during the Encino T-Mobile Wireless robbery.  One hammer handle was yellow and black, another hammer handle was blue, and the last hammer had a black handle with a black and silver top.

37.  About one half-hour later, at 6:20 p.m., LAPD received information about a similar robbery at an AT&T Wireless store at 6203 Topanga Canyon Boulevard in Woodland Hills, California.  During that robbery, witnesses reported that three suspects entered the store wearing hoodies and ski-masks, used hammers to smash display cases, grabbed merchandise, and walked out of the store.

38.  After receiving reports of the robberies, I reviewed GPS location data for STEWART CELL, NEWSOME CELL, and the Blue Optima for January 15, 2022.  The location data showed the two phones and the Blue Optima traveled to Long Beach, to Inglewood, then to Encino, before eventually proceeding to the Woodland Hills area.

39.  Later, I learned that suspects yielding hammers had robbed T-Mobile Wireless stores in Long Beach and Inglewood on January 15, 2022.  Specifically, the robberies occurred: (i) at 4:39 p.m., T-Mobile Wireless Store, 2601 N. Bellflower

Boulevard, Long Beach, California; and (ii) at 5:18 p.m., T-Mobile Wireless Store, 619 W. Manchester Avenue, Inglewood, California. GPS location data for STEWART CELL, NEWSOME CELL, and the Blue Optima placed the phones and vehicle near the locations of the four January 15, 2022 robberies around the time that the robberies occurred.

40. That evening, officers decided to use data from the Blue Optima GPS tracker to intercept the car and the suspects inside. At approximately 9:00 p.m., officers located the Blue Optima traveling northbound on the 170 Freeway near Oxnard Street in North Hollywood. LAPD patrol cars got behind the Blue Optima and activated their lights and sirens to conduct a traffic stop. The Blue Optima exited the freeway at Oxnard Street and came to a stop on Oxnard Street. After officers stepped out of their cars to approach the Blue Optima, the driver of the Blue Optima drove off and led officers on a short pursuit.

41. The Blue Optima eventually came to a stop in the area of Irvine Avenue and Weddington Street in North Hollywood. At that time, all four occupants of the Blue Optima got out of the car and fled on foot. Eventually, with the assistance of canine units, all four were taken into custody.

42. The occupants of the Blue Optima were identified as STEWART, NEWSOME, BELSER, and a juvenile. BELSER and the juvenile were wearing black hooded sweatshirts and gray sweatpants similar to those worn by the robbers during the Encino T-Mobile Wireless robbery just hours earlier. In an

apparent attempt to disguise his connection to the robberies, STEWART removed some of his clothing and his shoes during his flight from law enforcement.  However, STEWART was still wearing black sweatpants similar to those worn by one of the suspects in the Encino T-Mobile Wireless robbery and other robberies that day.

43.  Inside the Blue Optima, officers located several hammers, ski masks, gloves, iPhones, Apple Watches, and other items that matched the IMEIs of items reported stolen during the above-described cell phone store robberies on January 15, 2022. The hammers matched the distinctive coloration of the hammers wielded by the suspects in the Encino T-Mobile Wireless robbery.

44.  Officers recovered from the Blue Optima several Apple iPhones with IMEI numbers that matched the IMEI numbers of the phones stolen during the Encino T-Mobile Wireless robbery. Moreover, officers retraced the path of the fleeing Blue Optima and found a green backpack in the street on Radford Avenue just south of Oxnard Street.  The backpack contained multiple iPhones, iPads, and Apple Watches that had been reported stolen during robberies on January 15, 2022.

45.  During a search of STEWART incident to arrest, officers located and seized SUBJECT DEVICE 1 from STEWART's front pants' pocket.  Additionally, during a search of NEWSOME incident to arrest, officers located and seized SUBJECT DEVICES 2, 3, and 4 from NEWSOME's front pants' pocket.

### G.   STEWART and NEWSOME's Post-Arrest Statements

46.   In a post-arrest Mirandized statement on January 15, 2022, STEWART identified STEWART CELL as his number but maintained that he knew nothing about any robberies.

47.   In his post-arrest Mirandized statement, NEWSOME identified NEWSOME CELL as his number.  NEWSOME also stated that he often stayed with his girlfriend who lived at 1303 W. Francisquito Avenue, Apartment 46, in West Covina.  NEWSOME stated that he was unaware of any crimes committed by him or others but maintained that he had remained in the car during anything that had transpired earlier that evening.

### H.   T-Mobile Wireless Is Engaged in Interstate Commerce

48.   T-Mobile Wireless stores are businesses that engage in interstate commerce.  T-Mobile US, Inc., is a nationwide wireless service and wireless products business.  T-Mobile's headquarters is located in Bellevue, Washington, and has retail stores located outside the state of California.

### V.   TRAINING AND EXPERIENCE ON ROBBERIES

49.   From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct robbery investigations, I have learned that robbers will use cell phones or smart phones for some or all of the following reasons:

   a.   They will use website mapping programs (i.e. Google or Bing) to see where target stores are located in a specific area;

b.    They will search online newspaper articles to read what information is available regarding the robberies;

c.    They will search online newspaper articles or websites dedicated to unknown robbery subjects to view the bank security images of the robbery/robber;

d.    They will use their phone to:

i.    Take photos/video of potential locations they considered targeting.

ii.   Take photos of the items they have taken from a robbery.

iii.  Take photos of trips or places they have been following a robbery – at times showing an influx of income they normally did not have;

iv.   They will send text messages to coconspirators and/or associates/friends indicating what (criminal) activities they have been engaged in;

v.    They will use the mapping application on their phone to get directions to/from a location;

vi.   They will send communications (including photographs of stolen merchandise) to prospective buyers of stolen merchandise, including "fences".

vii.  Communications between the robber and any accomplices, such as a getaway driver.

viii.    In addition, the search of a cell phone can reveal GPS location information including historical location data to show whether the robber's phone was located near the robberies around the time of those robberies.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[2]

50.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

---

[2] As used herein, the term "digital device" includes the SUBJECT DEVICES and any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

51.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises or in a short period of time for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

52.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.   Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or

eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

> b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

> a.   Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress STEWART's, NEWSOME's, or BELSER's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of STEWART's, NEWSOME's, or BELSER's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

53.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII.  CONCLUSION

54.  For all of the reasons described above, there is probable cause to believe that STEWART, NEWSOME, and BELSER have committed a violation of 18 U.S.C. § 1951(a): Interference with Commerce by Robbery.  There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 18th day of
January, 2022.

_____
HON. JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE